UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALLISON TRANSMISSION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:16-cv-2455 |
| ) | |
| ) | <u>JURY TRIAL DEMANDED</u> |
| ) | |
| FLEETPRIDE, INC. ) | |
| ) | |
| Defendant ) | |
| ) | |

**COMPLAINT**

Allison Transmission, Inc. ("Allison" or "Plaintiff"), for its Complaint against the Defendant, Fleetpride, Inc. ("Fleetpride" or "Defendant") alleges and states:

**PARTIES, JURISDICTION, AND VENUE**

1. Allison is a Delaware corporation with its principal place of business in Indianapolis, Indiana.

2. Upon information and belief, Fleetpride is a Texas corporation with its headquarters in Irving, Texas. Fleetpride has stores across the country, including a Fleetpride store and place of business at 1140 S. West Street, Indianapolis, Indiana.

3. This action arises under the trademark and unfair competition laws of the United States and is brought pursuant to Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and common law.

4. This Court has jurisdiction over the subject matter of this case pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(b).

5. This Court has supplemental jurisdiction over the claims in this Complaint that arise under state common law pursuant to 28 U.S.C. § 1367(a) because these state law claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6. This Court has personal jurisdiction over Defendant because Defendant has been conducting continuous and systematic business within the State of Indiana and within the boundaries of the Southern District of Indiana by promoting, advertising, offering for sale, and selling its goods and services.  Further, Defendant has caused harm and committed the unlawful acts hereinafter complained of in the Southern District of Indiana.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL COUNTS

### The Business and Trademarks of Plaintiff

8. Allison introduced the world's first fully automatic transmission for commercial vehicles nearly 70 years ago. Since that time, Allison has developed a global reputation as the leading manufacturer of high quality, reliable, medium- and heavy-duty automatic transmissions. Over time, Allison has recognized the importance of using transmission fluids with the appropriate qualities to maximize the performance and productive life of its transmissions.

9. Allison has devoted significant resources to the development of extensive specifications and a rigorous testing regimen for ensuring that the transmission fluids meeting Allison's specifications are of very high quality and will work especially well in its transmissions.

10. In 1999, Allison developed a transmission fluid certification standard to help assure the public that transmission fluids meeting the certification standard would work particularly well with its transmissions.

11. Allison coined the unique trademark TES 295 to use in connection with this certification standard. To protect its rights in the TES 295 mark, Allison sought and achieved federal registration of the TES 295 trademark in multiple variations (collectively, the "TES 295 Marks"):

| Mark | Goods | Reg. No. | Reg. Date |
|---|---|---|---|
| TES 295 | Transmission fluid | 4379699 | August 6, 2013 |
| [ALLISON APPROVED COMPLIES WITH TES 295 SPECIFICATION logo] | Transmission fluid | 4166531 | July 3, 2012 |
| [Allison Transmission AUTHORIZED BY ALLISON TRANSMISSION, INC. TES 295 COMPLIES WITH TES 295 SPECIFICATIONS logo] | Transmission fluid | 4993880 | July 5, 2016 |

Copies of the registration information for the TES 295 Marks are attached to the Complaint at **Exhibit A.**

12. Although certain elements of the TES 295 certification standard are known, Allison maintains the confidentiality of other elements of that certification standard.

13. To license the right to use and display the TES 295 Marks, a licensee must first demonstrate that its transmission fluid meets the rigorous requirements of Allison's certification standard.

14. Through the extensive, continuous use and promotion of the TES 295 Marks, the TES 295 Marks have become associated with Allison and with the products certified by Allison.

15. Allison has used and continues to use the TES 295 Marks to specify transmission fluids that are certified by Allison and that meet its exacting standards.

16. The TES 295 Marks are distinctive of the certification of transmission fluid products by Allison.

17. As a result of its certification of products under the TES 295 Marks, as well as the promotion and use of the TES 295 Marks in connection with the sale and offering for sale of transmission fluids certified by Allison, the TES 295 Marks and the goodwill of the business associated therewith are of significant value to Allison.

<u>Relevant Background and Discussion Between the Parties</u>

18. In May of 2015, Allison became aware that Fleetpride was marketing and selling transmission oil under the name PRIMATECH TES295 and prominently using a version of the TES 295 Marks within its product numbers and in its advertising.

19. On June 4, 2015, counsel for Allison sent a letter to Fleetpride, providing information related to the TES 295 Marks and requesting that Fleetpride and its affiliates immediately cease and desist from using language in its product packaging and advertising likely to deceive the public into assuming that Fleetpride's transmission fluid met Allison's certification standards and using one or more of the TES 295 Marks as incorporated in its

product names, product numbers, advertising, and any other manner likely to confuse and deceive the public (collectively, the "Infringing Marks").

20. On June 16, 2015, the general counsel for Fleetpride responded, assuring Allison that Fleetpride had changed the product labeling to address Allison's concerns. Fleetpride, however, failed to do so.

21. On June 22, 2015, counsel for Allison responded to Fleetpride outlining its continued objections to Fleetpride's product advertising and packaging and reiterating its demands that Fleetpride cease its confusing and deceptive use of the Infringing Marks.

22. In late July 2015, Allison received a response from outside counsel for Fleetpride. Fleetpride's counsel explained that Fleetpride believed its use of the Infringing Marks was fair use and that Fleetpride would continue to use the Infringing Marks.

23. Given the parties' continued disagreement as to the acceptable use of the TES 295 Marks and Fleetpride's statements regarding the quality of its transmission fluid, the parties and counsel discussed the matter via telephone in early August 2015 in hopes of facilitating an amicable resolution.

24. In September of 2015, outside counsel for Fleetpride proposed general settlement terms that involved Fleetpride ceasing use of the Infringing Marks in its product names, product numbers, and advertising.  Fleetpride's counsel indicated that Fleetpride would phase out use of the Infringing Marks by the end of 2015.

25. The parties sought to put the settlement terms in writing and counsel for Fleetpride offered to draft a settlement agreement beginning in October 2015.

26. Despite reminders and follow up emails from counsel for Allison, counsel for Fleetpride took nearly two months to provide an initial draft of the settlement agreement.

Despite the delays in producing the draft settlement document, counsel for Fleetpride continued to assert that Fleetpride would cease use of the Infringing Marks in its product name, product number, and advertising by the end of 2015.

27. Fleetpride did not cease use of the Infringing Marks at the end of 2015 and Allison continued to find evidence of unauthorized use of the Infringing Marks by Fleetpride after the end of 2015, and pointed out the same to Fleetpride's counsel.

28. Despite Allison's continued good faith negotiations and Fleetpride's assertions that the settlement terms were close to being finalized, on February 2, 2016, counsel for Fleetpride informed Allison that Fleetpride was not agreeable to Allison's most recently proposed amendments to the settlement agreement and had decided not to enter into any settlement agreement with Allison. As justification, counsel for Fleetpride asserted that Fleetpride had addressed Allison's concerns and ceased use of the Infringing Marks, including in its product numbers, and Fleetpride would therefore consider the matter resolved.

29. Since Fleetpride's email of February 2, 2016, counsel for Allison has identified multiple instances of Fleetpride's continued use of the Infringing Marks and has reiterated its demand that Fleetpride immediately cease use of the Infringing Marks.

30. Most recently, in August 2016, despite Fleetpride's numerous assertions to the contrary, Allison determined that Fleetpride continues to sell its products bearing the Infringing Marks.

## Defendant's Current Infringement

31. Fleetpride's adoption and continued use of one or more of the TES 295 Marks is a clear and willful attempt to trade on Allison's TES 295 Marks and the goodwill symbolized thereby.

32. Fleetpride continues to prominently use one or more of the TES 295 Marks in its product numbers as displayed on Fleetpride's product packaging, product catalogs, advertising and marketing materials, despite its many statements to the contrary and with full knowledge of Allison's rights in and to the TES 295 Marks. Photographs showing one example of Fleetpride's current infringing activities can be found at **Exhibit B.**

33. Fleetpride's product packaging, advertising, and marketing materials constitute false and deceptive advertising.

34. The goods offered by Fleetpride are not and have never been approved by Allison, and Fleetpride does not have the sponsorship, consent, approval, or certification of Allison to use the TES 295 Marks.

35. Fleetpride's adoption and use of the Infringing Marks, and its false and deceptive advertising statements concerning the quality of its products, have been made in interstate commerce.

36. Fleetpride's goods and the goods certified by Allison under its TES 295 Marks are each transmission fluids and are marketed through the same channels of trade and to the same consumers.

37. Fleetpride's use of the Infringing Marks falsely creates the impression that Fleetpride's goods are offered or certified by or affiliated with Allison, and constitutes trademark infringement and unfair competition.

38. Fleetpride's unfair competition, false and deceptive advertising, and infringement demonstrate intentional, willful, and bad faith attempts to deceive or to create mistake or confusion in the minds of customers relying on the TES 295 Marks and potential customers and in the minds of the public, to trade on Allison's goodwill, to palm off Fleetpride's products as

those authorized or certified by Allison, and to create the false impression of a connection, affiliation, or association with, sponsorship or approval by or between Allison and Fleetpride, all causing irreparable injury to Allison.

39. Fleetpride knows that its activities described above are infringing, and thus its continued infringing acts are committed knowingly, willfully, and in bad faith.

## COUNT I
## INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK
## (LANHAM ACT, 15 U.S.C. § 1114(1))

40. Allison realleges and incorporates by reference the allegations of paragraphs 1 through 39 as if fully set forth in this paragraph.

41. Fleetpride's promotion, advertising, provision, sale, and offering for sale of its products under the Infringing Marks are likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of said products, and is intended and is likely to cause such parties to believe in error that the Fleetpride products have been authorized, sponsored, approved, endorsed, or licensed by Allison, or that Fleetpride is in some way related to or affiliated with Allison.

42. Fleetpride's activities, as described herein, constitute infringement of the TES 295 Marks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114.

43. Fleetpride's use of the Infringing Marks with the promotion, advertising, and sale of its products has been and continues to be willful, deliberate, unfair, false, deceptive, and is intended to trade upon the goodwill and reputation appurtenant to the TES 295 Marks.

44. Fleetpride's acts have damaged and will continue to damage Allison.

45. As a result of these wrongful acts, Allison is entitled to injunctive relief prohibiting Fleetpride from using the TES 295 Marks, or any marks confusingly similar thereto,

in accordance with 15 U.S.C. § 1116, and to recover all damages, that Allison has sustained and will sustain, and all gains, profits, and advantages obtained by Fleetpride as a result of its infringing acts in an amount not yet known, as well as the costs of this action, pursuant to 15 U.S.C. § 1117(a).

46. This is an exceptional case justifying the award of attorneys' fees under Section 1117(a).

## COUNT II
## FEDERAL UNFAIR COMPETITION
## AND FALSE DESIGNATION OF ORIGIN
## (LANHAM ACT, 15 U.S.C. § 1125(A))

47. Allison realleges and incorporates paragraphs 1 through 46, as if fully set forth in this paragraph.

48. Fleetpride's conduct complained of herein constitutes federal unfair competition, false designation of origin, and false advertising pursuant to 15 U.S.C. § 1125(a).

49. Fleetpride's intentional and unlawful use in commerce of the TES 295 Marks is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of Fleetpride by Allison and therefore constitutes false designation of origin and false advertising, in violation of 15 U.S.C. § 1125(a).

50. As a direct and proximate result of Fleetpride's knowing, deliberate, and willful infringement of the TES 295 Marks, Allison has suffered and will continue to suffer harm to its business, reputation, and goodwill.

51. As a result of these wrongful acts, Allison is entitled to injunctive relief prohibiting Fleetpride from using the TES 295 Marks, or any marks confusingly similar thereto, in accordance with 15 U.S.C. § 1116, and to recover all damages, that Allison has sustained and will sustain, and all gains, profits, and advantages obtained by Fleetpride as a result of its

infringing acts in an amount not yet known, as well as the costs of this action, pursuant to 15 U.S.C. § 1117(a).

52. This is an exceptional case justifying the award of attorneys' fees under Section 1117(a).

## COUNT III
## COMMON LAW UNFAIR COMPETITION
## AND TRADEMARK INFRINGEMENT

53. Allison realleges and incorporates paragraphs 1 through 52, as if fully set forth in this paragraph.

54. Allison is the owner and authorized user of the TES 295 Marks, with the right to enforce the TES 295 Marks. Fleetpride is not authorized to use the TES 295 Marks, or any mark confusingly similar to the TES 295 Marks.

55. The TES 295 Marks are inherently distinctive. In addition, Allison established secondary meaning in the TES 295 Marks in connection with its certification of goods before Fleetpride began using the TES 295 Marks.

56. Fleetpride has sold, promoted, and offered for sale its products and services using the TES 295 Marks in violation of and with knowledge of Allison's rights to the TES 295 Marks for the purpose of trading upon Allison's goodwill and reputation.

57. Fleetpride's use of the TES 295 Marks constitutes a willful and intentional infringement of Allison's common law trademark rights in the TES 295 Marks and is likely to cause confusion, mistake, and deception as to source, affiliation, or sponsorship with Allison.

58. Allison has been harmed by Fleetpride's wrongful acts.

59. Allison is entitled to injunctive relief, recovery of Fleetpride's profits, actual damages, treble profits and damages, costs, and reasonable attorneys' fees.

## COUNT IV
## FALSE DESCRIPTION OF GOODS

60. Allison realleges and incorporates paragraphs 1 through 59, as if fully set forth in this paragraph.

61. Consumers viewing the "Suitable for Allison Transmissions" statements in connection with the use of the Infringing Marks will assume that Allison has "recommended" or "certified" Fleetpride's products.

62. Fleetpride's actions are calculated to willfully and intentionally cause actual confusion and are likely to cause confusion or mistake among purchasers as to the true origin, source, sponsorship, or affiliation of Fleetpride's goods and services with Allison, or of the approval by Allison of Fleetpride's goods and commercial activities, in violation of 15 U.S.C. § 1125(a).

63. Fleetpride's actions have harmed and continue to harm Allison.

64. As a result of these wrongful acts, Allison is entitled to recover actual and treble damages, an accounting of Fleetpride's profits, reasonable attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Allison requests the Court to award the following relief:

1. The seizure of all products, product packaging, advertising materials, and other things within Fleetpride's possession or control bearing any false or misleading statements relating to the TES 295 certification, the Infringing Marks, other TES 295 Marks, or any other Allison trademark likely to cause confusion (collectively, the "Infringing Products and Materials").

2. An order by the Court that Fleetpride recall all Infringing Products and Materials that have been sold or otherwise distributed and inform all customers who have purchased Infringing Products and Materials that those products and materials do not meet the TES 295 certification standard and that use of such Infringing Products and Materials may adversely affect any relevant Allison transmission warranty.

3. An order by the Court that Fleetpride provide Allison with information regarding all customers that have purchased the Infringing Products and Materials.

4. The issuance of preliminary and permanent injunctions enjoining and restraining Fleetpride, its associates, agents, servants, employees, officers, directors, representatives, successors, assigns, attorneys and all persons, including but not limited to all of Fleetpride's dealers, distributors and customers, in active concert or participation with it who learn of the injunction through personal service or otherwise:

(a) from using the TES 295 Marks or any marks confusingly similar to the TES 295 Marks, including but not limited to, the marketing and sale of any product bearing the TES 295 Marks without the authorization of Allison;

(b) from claiming, representing, suggesting, or implying to offer goods that meet or exceed any certification standards of Allison, including but not limited to its TES 295 certification standard;

(c) from representing by words or conduct that Fleetpride or its products are authorized, sponsored, endorsed, or otherwise connected with Allison;

(d) from making false or deceptive statements, misrepresentations, or statements comparing Fleetpride's products with the TES 295 certification without adequate investigation or testing by Fleetpride; and

12

(e) from engaging in any other conduct which causes, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection or association of Fleetpride or its products and services with Allison.

5. An accounting and judgment against Fleetpride and all others acting concert with it, for (a) all profits received from the sale of goods or services by Fleetpride in association with the infringement of the TES 295 Marks or any marks confusingly similar to the TES 295 Marks; (b) all profits received from the sale of goods or services by Fleetpride in conjunction with its claims or representations that those goods or services met or exceeded specifications of Allison; (c) damages sustained by Allison on account of Fleetpride's trademark infringement, unfair competition, and false designation of origin; (d) treble damages, where appropriate; and (e) punitive damages to deter such actions in the future.

6. An enhancement of damages to a sum not exceeding three (3) times the profits earned by Fleetpride as a result of their willful and improper use of marks confusingly similar to the marks of Allison.

7. Damages under 15 U.S.C. § 1117(b) and 15 U.S.C. § 1117(c).

8. Pursuant to 15 U.S.C. § 1118, the destruction of all business cards, invoices, forms, advertisements, packaging, catalogs, promotional materials or any other materials bearing the TES 295 Marks or any other mark confusingly similar to the TES 295 Marks, and the modification of all websites, domain names, social media handles, URLs, and other digital or online properties owned or controlled by Fleetpride to delete use of the TES 295 Marks or any references to the TES 295 Marks.

9. Allison's costs of this suit, including reasonable attorneys' fees and expenses, with interest pursuant to 15 U.S.C. § 1117.

10. All other just and proper relief.

Respectfully submitted,

*/s/Deborah Pollack-Milgate*

Deborah Pollack-Milgate (#22475-49)
David A.W. Wong (#25161-49)
Caitlin R. Byczko (#31905-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: 317-236-1313

Attorneys for Plaintiff,
Allison Transmission, Inc.