UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALLISON TRANSMISSION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-02455-LJM-MJD |
| | ) | |
| FLEETPRIDE, INC., and | ) | |
| BP LUBRICANTS USA INC., | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER ON MOTION TO DISMISS COUNTERCLAIMS

This matter comes before the Court on Plaintiff Allison Transmission, Inc.'s ("Allison's"), Motion to Dismiss Counterclaims (the "Motion"). Dkt. No. 52. Allison argues that Defendant Fleetpride, Inc. ("Fleetpride"), lacks standing to support its counterclaims to invalidate a certification mark owned by Allison. *Id*. at ¶¶ 1-2. Allison also seeks to dismiss Fleetpride's counterclaim seeking declaratory judgment for non-infringement because it is duplicative of Allison's infringement claim in its Second Amended Complaint. *Id*. at ¶ 3. For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Allison's Motion.

## I. BACKGROUND

Allison began manufacturing automatic transmissions for commercial vehicles approximately seventy years ago and has since developed a reputation for building high quality, reliable automatic transmissions. Dkt. No. 43, ¶ 8. In order to protect the rights to its name, Allison obtained federal registration for standard character trademarks in "ALLISON" and "ALLISON TRANSMISSIONS" (the "Allison Standard Character Marks").

*Id.* Allison also registered five design marks for use in relation to its automatic transmission products, all of which incorporated at least one of the Allison Standard Character Marks. *Id.*

In 1999, Allison developed a new transmission fluid certification standard, TES 295, which it used to indicate which transmission fluids worked best with its transmissions. *Id.* at ¶¶ 11-12. In connection with this new certification standard, Allison registered for a standard character, certification mark in "TES 295" (the "TES 295 Standard Character Mark") and two design marks, both of which include the TES 295 Standard Character Mark and at least one of the Allison Standard Character Marks (collectively with the TES 295 Standard Character Mark, the "TES 295 Marks"). *Id.* at ¶ 12. Before obtaining a license to use the TES 295 Marks, Allison requires each licensee to first demonstrate that its transmission fluid meets Allison's strict requirements for obtaining TES 295 certification. *Id.* at ¶ 15.

In May 2015, Allison learned that Fleetpride was marketing and selling transmission fluid known as "Primatech TES295," and that Fleetpride's packaging of Primatech TES295 incorporated the TES 295 Standard Character Mark, as well as the Allison Standard Character Marks. *Id.* at ¶ 20. As an example, Allison attached Exhibit C to its Second Amended Complaint, which depicts a Fleetpride transmission fluid container label (the "Primatech Label") that states the product is "suitable for use in Allison Transmissions for extended drain" and lists its product number as "PTATF-TES295-G." *Id.* at Ex. C. Although Allison requested that Fleetpride cease and desist its use of Allison's marks, Fleetpride refused, believing that its use of Allison's marks was a non-

infringing, fair use.  *Id.* at ¶¶ 21, 24.  Fleetpride continues to employ Allison's marks in relation to its transmission fluid products.  *Id.* at ¶ 27.

Allison alleges that "Fleetpride's adoption and continued use" of the Allison Standard Character Marks and the TES 295 Standard Character Mark infringes on all of Allison's trademark rights because Fleetpride's use of its marks falsely suggests that Fleetpride's transmission fluid is certified or sponsored by Allison, or is otherwise affiliated with Allison.  *Id.* at ¶¶ 28-38.  As such, Allison claims that Fleetpride's use of its marks constitutes trademark infringement, unfair competition, and a false description of goods in violation of the Lanham Act and common law.  *Id.* at ¶¶ 39-66.

On April 26, 2017, in response to Allison's Second Amended Complaint, Fleetpride filed its Answer and Counterclaim, in which it asserts three counterclaims against Allison (the "Counterclaims").  Dkt. No. 47.  In Counterclaims I and II, Fleetpride seeks to invalidate Allison's TES 295 Marks, in accordance with 15 U.S.C. § 1064.  *Id.* at ¶¶ 95-137.  Fleetpride similarly alleges as affirmative defenses that the TES 295 Marks are invalid.  *Id.* at ¶¶ 74-76.  Fleetpride asserts that invalidation of the TES 295 Marks is appropriate because Allison improperly produced and marketed an automatic transmission fluid using the TES 295 Marks and because Allison discriminately refused to certify products meeting the TES 295 certification standards.  *Id.* at ¶¶ 74-76, 95-137.

Additionally, in Counterclaim III, Fleetpride requests declaratory judgment that it has not infringed upon any of Allison's marks.  *Id.* at ¶¶ 138-142.  In support of this counterclaim, Fleetpride attached the label it currently uses for its private label automatic transmission fluids, now branded as "OTR" (the "OTR Label").  *Id.* at ¶ 138; Ex. 8.  The front of the OTR Label states that OTR is "suitable for use in Allison Transmissions for

extended drain." *Id.* at Ex. 8. The back of the OTR Label further indicates that OTR is "suitable for use in applications where the OEM specifies a fluid providing performance capability comparable to Allison TES 295® specification" but notes that OTR "is <u>not</u> certified by Allison Transmission under the TES 295® specification." *Id.* Unlike the Primatech Label, the product number on the OTR Label, "PTATF-SSP-G," does not include any reference to "TES 295." *Id.*

Allison seeks to dismiss the Counterclaims, pursuant to Federal Rules of Civil Procedure (the "Rules") 12(b)(1) and 12(b)(6). Dkt. No. 52. Specifically, Allison asserts that Fleetpride lacks sufficient standing to seek invalidation of the TES 295 Marks in Counterclaims I and II because Fleetpride never sought TES 295 certification. Dkt. No. 53 at 2-6. Furthermore, Allison argues that Counterclaim III should be dismissed under Rule 12(b)(6) because Fleetpride's claim of non-infringement serves "no useful purpose" in light of Allison's initial claim of infringement. *Id.* at 6-7.

## II. <u>COUNTERCLAIMS I AND II: INVALIDATION UNDER 15 U.S.C. §§ 1064(3) & (5)</u>

With respect to Counterclaims I and II, Allison argues that Fleetpride lacks standing under 15 U.S.C. §§ 1064(3) and 1064(5)(B) & (D). Dkt. No. 53 at 2-6. In response, Fleetpride asserts that it has sufficient standing to invalidate the TES 295 Marks because Allison first asserted its claims against Fleetpride for infringement of those marks. Dkt. No. 56 at 7-8.

A motion to dismiss for lack of standing constitutes a challenge to the Court's subject matter jurisdiction under Rule 12(b)(1). *See Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). When ruling on a motion to dismiss under Rule 12(b)(1), the Court must accept "as true all facts alleged in the well-pleaded complaint and [draw] all

reasonable inferences in favor of the plaintiff." *Id.* The party invoking the Court's jurisdiction bears the burden of establishing that the Court has proper jurisdiction of the case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Court may view any evidence submitted beyond the jurisdictional allegations within a complaint to determine whether the Court has subject matter jurisdiction over a claim. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

When a motion to dismiss challenges a plaintiff's standing, the plaintiff bears the burden of demonstrating it has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

Under 15 U.S.C. § 1064, "any person who believes that he is or will be damaged … by the registration of a mark" may seek to cancel the registration of that mark under certain conditions. Such a damaged entity may seek to cancel a mark's registration at any time if the registered mark's "registration was obtained fraudulently or contrary to the provisions of [15 U.S.C. §] 1054 … or of subsection (a), (b), or (c) of [15 U.S.C. §] 1052." 15 U.S.C. § 1064(3). "[I]n the case of a certification mark," one may also seek to cancel the registered mark if

> the registrant (A) does not control, or is not able legitimately to exercise control over, the use of such mark, or (B) engages in the production or marketing of any goods or services to which the certification mark is applied, or (C) permits the use of the certification mark for purposes other than to certify, or (D) discriminately refuses to certify or to continue to certify the

goods or services of any person who maintains the standards or conditions which such mark certifies.

15 U.S.C. § 1064(5).

While Fleetpride seeks to invalidate the TES 295 Marks, pursuant to 15 U.S.C. §§ 1064(3) and 1604(5)(B) & (D)[1], Dkt. No. 47, ¶¶ 95-137, Allison asserts that Fleetpride lacks standing because it has not sustained the kind of damage necessary to invalidate a certification mark. Dkt. No. 53 at 2-6. The Court agrees.

Fleetpride must have statutory standing in addition to having constitutional standing to properly bring a claim against Allison to invalidate the TES 295 Marks under 15 U.S.C. § 1064. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). In order words, Fleetpride must fall "within the class of plaintiffs whom Congress has authorized to sue" under 15 U.S.C. § 1064 and must have "a cause of action under the statute" to bring its claims for invalidation. *Id.* at 1387. While few courts have examined the requirements for statutory standing to seek invalidation of certification marks, those that have done so determined that under 15 U.S.C. § 1064(5), the claimant must have sought and been refused certification under that mark to meet the statute's damage requirement. *See Am. Angus Ass'n v. Sysco Corp.*, 865 F. Supp. 1180, 1182 (W.D.N.C. 1993); *Am. Auto. Ass'n v. Nat'l Auto. Ass'n, Inc.*, 127 U.S.P.Q. 423, 1960 WL

---

[1] Under 15 U.S.C. § 1054, certification marks may be registered and entitled to the same protections as all other trademarks, unless such certification marks are "used so as to represent falsely that the owner or a user thereof makes or sells the goods or performs the services on or in connection with which such mark is used." As such, this condition illustrates the same requirement as 15 U.S.C. § 1064(5)(B), which prohibits a certification mark owner from marketing any goods using its certification mark. 15 U.S.C. § 1064(5)(B). Moreover, Fleetpride has not otherwise distinguished its claims under 15 U.S.C. § 1064(3), which incorporates the requirements of 15 U.S.C. § 1054, and its claims under 15 U.S.C. §1064(5)(B) in any way. Therefore, the Court will analyze Fleetpride's claims under 15 U.S.C. §§ 1064(3) and 1064(5)(B) using the same standard.

7644 at *5 (T.T.A.B. 1960) ("*AAA*"); *see also*, 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 20:61 (4th ed. 2017) (citing *AAA*, 1960 WL 7644) ("Standing to cancel under [the] grounds [set forth in 15 U.S.C. § 1064(5)] exists for persons who were refused certification after meeting the prescribed standards or conditions of the certifier.").

In *AAA*, the Trademark Trial and Appeal Board ("TTAB") concluded that 15 U.S.C. § 1064's damage requirement with regard to certification mark challenges contemplates entities that "have been refused certification by [a certifier] after meeting the prescribed standards or conditions." *AAA*, 1960 WL 7644 at *5. The Board further determined that damage merely "resulting from the competition that exists between … any two concerns rendering similar services within the same territory … cannot serve as ground for cancelation under [15 U.S.C. § 1064]". *Id.*

The court in *Sysco* followed the TTAB's decision in *AAA* and concluded that a defendant that had not sought and been refused a license to use a certification mark lacks standing to bring a counterclaim to cancel that certification mark's registration. 865 F. Supp. at 1181-82. Additionally, the *Sysco* court rejected the broad "real interest" test promulgated in *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1325 (Fed. Cir. 1983), in favor of the test set forth in *AAA*. *Sysco*, 865 F. Supp. at 1182. The *Sysco* court "further note[d] that while an attack on the [certification] mark may give [the d]efendants leverage in the underlying infringement action, that does not constitute 'belief in damage' so as to give [them] standing to challenge the mark." *Id.* (citation omitted).

While Fleetpride does not refute that it failed to seek TES 295 certification, it argues that it still has standing to bring Counterclaims I and II because Allison first sued it for

infringement. Dkt. No. 56 at 7-8. In support of this position, Fleetpride cites several cases, including *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91-92 (2013). *Id.* at 7. In *Already*, the Supreme Court concluded that a defendant in a trademark infringement suit "had standing to file its counterclaim because [the plaintiff] was allegedly pressing an invalid trademark to halt [the defendant's] legitimate business activity." 568 U.S. at 92. However, neither *Already* nor any of the other cases cited by Fleetpride specifically addresses an entity's standing to invalidate a certification mark. Therefore, none of these cases contradict the rule set forth in *AAA* regarding proper standing to invalidate certification marks under 15 U.S.C. § 1064.

Because Fleetpride has not been damaged as contemplated by 15 U.S.C. § 1064 by seeking and being refused certification under the TES 295 standard, *see AAA*, 1960 WL 7644 at *5, it is not within the class authorized to sue to invalidate a certification mark under this statute. *See Lexmark*, 134 S. Ct. at 1387. Therefore, Fleetpride lacks statutory standing to seek invalidation of the TES 295 Marks, and Counterclaims I and II are hereby DISMISSED.

Just as Fleetpride lacks standing to support Counterclaims I and II seeking invalidation, Fleetpride also cannot support is affirmative defenses claiming the TES 295 Marks are invalid. Fleetpride cannot prove that it was "damaged" by the TES 295 Marks. Therefore, Fleetpride cannot prove all of the necessary elements of its affirmative defenses under 15 U.S.C § 1064. For this reason, the Court strikes Fleetpride's affirmative defenses regarding invalidity, Dkt. No. 47, ¶¶ 74-76, *sua sponte.*[2]

_____

[2] On May 17, 2017, Fleetpride filed its Motion for Bifurcated or Phased Discovery in order to conduct discovery relating to invalidity before any discovery regarding infringement and damages. Dkt. No. 49. Because the Court is dismissing Counterclaims I and II and is

## III. COUNTERCLAIM III: NON-INFRINGEMENT

In Counterclaim III, Fleetpride requests declaratory judgment stating that its automatic transmission fluid labels do not infringe upon any of Allison's marks. Dkt. No. 47, ¶¶ 138-142. However, Allison argues that the Court should dismiss Counterclaim III, pursuant to Rule 12(b)(6), because Fleetpride's claim for non-infringement is duplicative of Allison's affirmative claim against Fleetpride for infringement. Dkt. No. 53 at 6-7.

Under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Esekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Documents central to the complaint and referred to in it, as well as information that is properly the subject of judicial notice may also be considered. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (further citation omitted)).

Under the Supreme Court's directive in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a defendant's motion to dismiss for failure to state a claim upon which relief may be granted, a plaintiff must provide the grounds for its entitlement to relief with more than mere labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "allegations must be enough to raise a right to relief above the speculative level." *Id.* The touchstone is whether the complaint gives the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41,

---

striking Fleetpride's affirmative defenses relating to invalidity, Fleetpride's Motion for Bifurcated or Phased Discovery is **DENIED as moot**.

47 (1957)).  Legal conclusions or conclusory allegations are insufficient to state a claim for relief.  *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).

When considering whether a defendant's product infringes upon a plaintiff's intellectual property, the defendant "has a right to know whether [its] product … infringes any valid claim" in relation to that intellectual property.  *Kalo Inoculant Co. v. Funk Bros. Seed Co.*, 161 F.2d 981, 991 (7th Cir. 1947), *rev'd on other grounds*, 333 U.S. 127 (1948).  *See also, May v. Carriage, Inc.*, 688 F. Supp. 408, 414 (N.D. Ind 1988).  Thus, a defendant may counterclaim for declaratory judgement as to non-infringement in order to ensure that all potential issues or claims of infringement between the parties are resolved in a single action.  10B MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2761 (4th ed. 2017) (citing *Kalo*, 161 F.2d at 991).  However, "[w]here the substantive suit would resolve the issues raised by the declaratory judgment" counterclaim, dismissal of that counterclaim is appropriate because, without any further uncertainty or anticipation of litigation, "the declaratory judgment action serves no useful purpose."  *Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014) (internal quotations omitted).

Although Allison asserts that Fleetpride's claim for non-infringement is a "mere duplicate" of its infringement claim, Dkt. No. 53 at 6, Counterclaim III is not duplicative of Allison's affirmative claim for infringement.  In its Second Amended Complaint, Allison indicates that it first learned of Fleetpride's alleged infringement in May 2015, when it "became aware that Fleetpride was marketing and selling transmission oil under the name PRIMATECH TES 295 and prominently using various versions of [the Allison Standard Character Marks and the TES 295 Standard Character Mark] within its product numbers

and its advertising." Dkt. No. 43, ¶ 20. Allison notes that Fleetpride's counsel assured Allison that Fleetpride would change its product labeling to avoid using Allison's marks, but Allison alleges that Fleetpride failed to make sure changes and instead continued to use Allison's marks on its product advertising and packaging. *Id.* at ¶¶ 22-27. Allison further alleges that Fleetpride's continued prominent use of the Allison Standard Character Marks and the TES 295 Standard Character Mark "in its product numbers as displayed on Fleetpride's product packaging, product catalogs, advertising and marketing materials," as well as "Fleetpride's statement that its products are 'Suitable for Use in Allison Transmissions for Extended Drain,'" constitutes infringement of Allison's marks. *Id.* at ¶¶ 29-36. To demonstrate Fleetpride's infringement, Allison attached photographs of the Primatech Label as "one example of Fleetpride's infringing activities." *Id.* at 29, Ex. C.

However, in support of Counterclaim III, Fleetpride discussed and attached the OTR Label, which it "currently uses to identify and sell its private label automatic transmission fluids." Dkt. No. 47, ¶ 138; Ex. 8. While the OTR Label states that it is "suitable for use in Allison Transmissions for extended drain," just like the Primatech Label, Dkt. No. 43, Ex. C; Dkt. No. 47, Ex. 8, there are key distinctions between these two labels. First, unlike the Primatech Label, the product number on the OTR Label is "PTATF-SSP-G" and does not incorporate the words "TES 295." Dkt. No. 47, Ex. 8. The OTR Label also includes a disclaimer, stating that the product is "suitable for use in applications where the OEM specifies a fluid providing performance capability comparable to Allison TES 295® specification" but that it "is <u>not</u> certified by Allison

Transmission under the TES 295® specification." *Id.* No such disclaimer is found on the Primatech Label attached to Allison's Second Amended Complaint. Dkt. No. 43, Ex. C.

In light of these differences between the Primatech Label presented by Allison and the OTR Label provided by Fleetpride, the Court cannot conclude that Counterclaim III is merely duplicative of Allison's claim of infringement. Although Allison states that the Primatech Label is only "one example" of Fleetpride's infringing behavior, Dkt. No. 43, ¶ 29, it does not reference any other instances in which it believed Fleetpride infringed upon its marks. Allison also specifically alleges that Fleetpride's product numbers that incorporated the "TES 295" characters infringed on their marks, *id.*, but the OTR Label's product numbers do not include such characters. Dkt. No. 47, Ex. 8. Therefore, while one of these labels may be found to infringe upon one or more of Allison's marks, it is possible that the other label could be non-infringing. Without the opportunity to address both of these potentially infringing product labels, Fleetpride could potentially be left open to future litigation regarding its use of the same trademarks at issue here. As such, Counterclaim III serves a useful purpose by addressing questions of infringement not clearly addressed by Allison's affirmative claim for infringement. Therefore, the Court denies Allison's motion to dismiss as it relates to Counterclaim III.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS in part and DENIES in part** Plaintiff Allison Transmission, Inc.' Motion to Dismiss Fleetpride's Counterclaims. Dkt. No. 52. Counterclaims I and II are hereby **DISMISSED**. The Court also **STRIKES** Fleetpride's affirmative defenses, Dkt. No. 47, ¶¶ 74-76, regarding invalidity of the TES 296 mark under 15 U.S.C. § 1064, *sua sponte*. Furthermore, Fleetpride's Motion for Bifurcated or Phase Discovery, Dkt. No. 49, is **DENIED as moot**.

IT IS SO ORDERED this 14th day of July, 2017.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

David A. W. Wong
BARNES & THORNBURG LLP (Indianapolis)
david.wong@btlaw.com

Deborah Pollack-Milgate
BARNES & THORNBURG LLP (Indianapolis)
dmilgate@btlaw.com

Caitlin R. Byczko
BARNES & THORNBURG LLP (Indianapolis)
cbyczko@btlaw.com

Linda R. Stahl
CARTER SCHOLER PLLC
lstahl@carterscholer.com

Stacey Cho Hernandez
CARTER SCHOLER PLLC
shernandez@carterscholer.com

Donald M. Snemis
ICE MILLER LLP
donald.snemis@icemiller.com

Joshua J. Bennett
LAW OFFICES OF CARTER SCHOLER ARNOTT & MOCKLER, PLLC
jbennett@carterscholer.com

Crystal Spivey Wildeman
WOODEN & MCLAUGHLIN LLP (Evansville)
cwildeman@woodmclaw.com